```
                    United States District Court
                      District of Massachusetts
_____
                               )
DELSHAUNE FLIPP,               )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No.
                               )    08-11374-NMG
TOWN OF ROCKLAND,              )
        Defendant.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On August 12, 2008, Delshaune Flipp ("Flipp") filed a complaint alleging race discrimination against several defendants, including the Town of Rockland, Massachusetts ("Rockland" or "the Town"). On October 14, 2008, prior to any responsive pleading by the defendants, Flipp filed an amended complaint in which she named only the Town as a defendant (pursuant to a stipulation reached by the parties). On the same day, the Town moved to dismiss Flipp's complaint that is currently before the Court.

## I.  Background

In her amended complaint, Flipp makes the following factual allegations. She is a black woman who became employed by Rockland as a clerical employee in August, 2005. In January, 2007, the Town Clerk's Office posted an opening for the clerical position of "Junior Administrative Assistant" in the "Assessors

-1-

Department," for which qualified members of the local municipal union would be considered before outside applicants pursuant to a collective bargaining agreement. Flipp claims she was qualified for the position and the only member of the municipal union to apply for it.

By late May, 2007, the position was still vacant. The union presented a formal grievance to Joseph Gibbons ("Gibbons"), the assistant assessor for Rockland, demanding that Flipp be appointed to the vacant position. Gibbons refused, however, and the union appealed his refusal to the Rockland Board of Selectmen which ordered to the Board of Assessors to fill the vacant position in accordance with the collective bargaining agreement.

Flipp alleges that soon after that order, Gibbons notified Flipp in writing that he would interview her but told a third party that he was only going "through the motions" and would not actually hire her. During the interview, conducted on August 21, 2007, Gibbons acted in an "antagonistic and hostile manner," told Flipp that he would not hire her and questioned her about irrelevant qualifications.

On August 28, 2007, Gibbons purportedly asked Flipp to submit to a second interview, during which he made her perform tasks which were not part of the normal duties of a Junior Administrative Assistant. Gibbons also allegedly made disparaging comments about Flipp in a letter that he published

to third parties along with a copy of her application.

On September 17, 2007, Gibbons and the Board of Assessors again refused to appoint Flipp to the vacant position. Flipp then filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

Having left the Junior Administrative Assistant position vacant, in July, 2008, the Town posted another position, entitled "Administrative Assistant," that is substantially similar to the Junior Administrative Assistant position to which Flipp applied. The Board of Assessors agreed to convene a screening committee, comprised of assessors from neighboring towns, to review Flipp's application for that position. The screening committee endorsed her for the position on September 19, 2008, but she has not been appointed to it.

Based on those events, Flipp alleges 1) race discrimination in violation of a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") (Count I), b) the Massachusetts Employment Discrimination Act, M.G.L. c. 151B (Count II) and c) M.G.L. c. 93 § 102 (Count III); 2) creation of a racially hostile work environment in violation of a) Title VII, 42 U.S.C. §2000e (Count IV), and b) M.G.L. c. 151B (Count V); and 3) retaliation with respect to the Town's decision not to hire her as either a Junior Administrative Assistant or an Administrative Assistant,

in violation of a) 42 U.S.C. § 2000e (Counts VI and VIII, respectively) and b) M.G.L. c. 151B (Counts VII and IX, respectively).

## II. Legal Analysis

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208. Mere "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" do not constitute sufficient

allegations. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (citation and internal quotation marks omitted).

**B.  Application**

    **1.  Exhaustion Requirement for Claims of Violation of Title VII (Counts I, IV, VI and VIII)**

In general, a condition precedent to filing a suit pursuant to Title VII is exhaustion of administrative remedies. Exhaustion is evidenced by the issuance of a "right-to-sue letter" to the plaintiff by the MCAD/EEOC. Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008); Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990). The exhaustion requirement is not jurisdictional, Owens v. West, 182 F. Supp. 2d 180, 190 (D. Mass. 2001), so it may be excused for equitable reasons. See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999).

The Town asserts that Flipp is barred from bringing any claims pursuant to Title VII because her complaint does not allege that she obtained a right-to-sue letter. Flipp responds that she received a right-to-sue letter on November 7, 2008, i.e., 14 months after she filed her charge of discrimination with the EEOC and MCAD and three months after filing her lawsuit.

Flipp also claims that she reasonably believed that she did not have to obtain a right-to-sue letter because, after she had informed defendant's counsel of her intent to remove her administrative charge to court, the parties entered into an

agreement stipulating that they would "streamline the process" of proceeding to litigation. Although that agreement relates to new claims (beyond the Title VII claims), Rockland reserved its right to assert only substantive affirmative defenses and not procedural defenses such as the receipt of a right-to-sue letter. Defendant's counsel also stated in an email that he generally wished "to avoid protracted procedural work" before heading to court. Therefore, Flipp presumed he would overlook the lack of a timely right-to-sue letter.

In light of those facts, equity appears to favor excusing Flipp's prior failure to exhaust her administrative remedies, particularly because she has since cured that failure and because the EEOC and MCAD had ample time to investigate Flipp's claims thoroughly. See Holmes v. PHI Serv. Co., 437 F. Supp. 2d 110, 123-24 (D.D.C. 2006) (excusing plaintiff's receipt of a right-to-sue letter four months after she had filed suit). Therefore, Flipp's claims of violation of Title VII will not be dismissed on the basis of failure to exhaust administrative remedies.

### 2. Claims of Discrimination Pursuant to Title VII and Chapter 151B (Counts I and II)

In disparate treatment cases such as this one, to establish a prima facie case of a violation Title VII or M.G.L. c. 151B, the plaintiff must demonstrate:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite

>     his qualifications, he was rejected; and (iv) that,
>     after his rejection, the position remained open and the
>     employer continued to seek applicants from persons of
>     complainant's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008). That standard is meant merely to raise an inference of discrimination and "was never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); see also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the ... prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). After the plaintiff makes a prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for rejecting the plaintiff. McDonnell Douglas, 411 U.S. at 802. If the defendant does so, the burden shifts back to the plaintiff who must show that the defendant's reason is merely a pretext for what was really discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08 (1993).

Rockland argues that Flipp's complaint fails to allege facts that would satisfy the fourth prima facie factor. It points out that the complaint contains allegations that the position for which Flipp applied remained vacant after she was rejected but not that the Clerk's Office continued to seek applications from persons of Flipp's qualifications.

Some ambiguity surrounds the fourth McDonnell Douglas factor. Indeed, a few cases from the First Circuit Court of Appeals express the factor in the disjunctive. See, e.g., Prescott, 538 F.3d at 40 (requiring that "the position remained open or was filled by someone else with similar qualifications") (emphasis added); cf. McDonnell Douglas, 411 U.S. at 802 (using "and"). Other cases, such as those cited by the defendants, appear to have altered the factor such that it requires that "[the] employer filled the position by hiring another individual with similar qualifications". E.g., Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002) (emphasis added); see also Rathbun v. Autozone, Inc., 361 F.3d 62, 74 (1st Cir. 2004); Sullivan v. Liberty Mut. Ins. Co., 825 N.E.2d 522, 531 (Mass. 2005). Courts do not explain the variations of the fourth McDonnell Douglas factor that they employ. In all of the cases cited by the defendants, the position was, in fact, filled, so perhaps the courts' opinions simply reflected the particular facts at issue.

The plaintiff persuasively asserts that, pursuant to Kosereis v. Rhode Island, 331 F.3d 207 (1st Cir. 2003), she is not required to allege that the position was filled by an individual with similar qualifications. There, the court clearly states that it is applying the McDonnell Douglas framework but identifies the fourth factor as requiring that "the position remained open or was filled by a person with similar

qualifications." Id. at 212-13.  Under that framework, the court determined that "comparative evidence is to be treated as part of the [defendant's] pretext analysis, and not as part of the plaintiff's prima facie case." Id. at 213; see also Cumpiano v. Banco Santander P.R., 902 F.2d 148, 155 (1st Cir. 1990) (noting that "we have never held that the fourth element ... can be fulfilled only if the complainant shows that she was replaced by someone outside the protected group").

That analysis comports with the holdings of other courts. See Pivirotto v. Innovative Sys., 191 F.3d 344, 353 (3d Cir. 1999) (finding that "seven of the eight federal courts of appeals to have addressed [the issue] have held that a plaintiff need not prove, as part of her prima facie case, that she was replaced by someone outside of the relevant class"); see also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 438 (1996) (finding that a prima facie case of age discrimination under the McDonnell Douglas framework does not require a plaintiff to allege replacement by someone outside the protected class). Accordingly, Counts I and II will not be dismissed.

### 3. Claims of Discrimination Pursuant to the Massachusetts Equal Rights Act ("MERA"), M.G.L. c. 93, § 102 (Count III)

The defendant moves to dismiss Count III of Flipp's complaint for the same reason as Counts I and II (i.e., its failure to fill the positions to which Flipp applied) but none of

the cases cited by the Town involves MERA. Therefore, it appears that Rockland has not met its burden of proving why Count III fails to state a claim upon which relief may be granted. Counsel for Flipp does not address Count III in his brief at all.

It is well-established, however, that a claim brought pursuant to MERA is preempted by Chapter 151B. See Ahanotu v. Mass. Turnpike Auth., 466 F. Supp. 2d 378, 388 (D. Mass. 2006). Chapter 151B provides the "exclusive statutory scheme for resolving employment discrimination claims under Massachusetts law" and, therefore, when a plaintiff asserts claims pursuant to both Chapter 151B and MERA, he or she may not pursue the MERA claims. Id. The Court questioned Flipp's counsel about that reason for dismissing Count III at a motion hearing held April 9, 2009, and counsel offered no response. Accordingly, the Court will dismiss Count III of Flipp's complaint.

### 4. Claims of a Racially Hostile Work Environment in Violation of Title VII and M.G.L. c. 151B (Counts IV and V)

To establish a prima facie case of a hostile work environment, the plaintiff must show that

> (1) [s]he is a member of a protected class; (2) [s]he experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive.

Prescott, 538 F.3d at 42. Rockland alleges that Flipp has failed to satisfy the fourth requirement for two reasons.

First, the Town contends that Flipp cannot assert a claim for hostile work environment against the Board of Assessors and Gibbons because they were never her employer.  That argument is moot, however, because both the Board of Assessors and Gibbons have already been dismissed from the case.

Second, Rockland asserts that Flipp failed to allege that its conduct affected her work environment because her complaint does not address the conditions related to the positions that she actually held.  Flipp responds that her complaint specifically sets forth that "a hostile work environment substantially interfered with [her] employment" and provides as examples the allegedly hostile interviewing incidents and the defendants' refusal to appoint her to the positions she sought.  Because Flipp applied for positions internally with her employer, hostility during the application process could have affected her employment situation.  Particularly given the low bar a plaintiff must meet in order to survive a motion to dismiss, the Court finds that Flipp has alleged facts sufficient to state a claim of a hostile work environment.

### 5. Claims of Retaliation in Violation of Title VII and M.G.L. 151B (Counts VI-IX)

To establish a prima facie case for retaliation, the plaintiff must show that

> (1) [s]he engaged in protected conduct; (2) [s]he was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the

protected conduct.

Prescott, 538 F.3d at 43.  Rockland contends that Flipp's complaint fails to satisfy the third factor because the decision not to hire Flipp was made three days before she filed her charge of discrimination with MCAD and the EEOC.

Flipp responds that, even after she filed the charge, the position of Junior Administrative Assistant at the Assessors Department remained open.  Her complaint also alleges that the union continued to press Rockland to fill the position and Rockland continued to refuse to appoint Flipp to it.  Flipp points out that, even after the filing of this lawsuit, the Town declined to appoint Flipp to the position of Administrative Assistant at the Assessors Department.  Those alleged facts are sufficient to withstand a motion to dismiss.

### ORDER

In accordance with the foregoing, the defendant's motion to dismiss (Docket No. 6) is, with respect to Count III, **ALLOWED,** but is otherwise **DENIED.**

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge
Dated: April 30, 2009